UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLENN HARDEN,

    Plaintiff,

v.

FORD MOTOR COMPANY, ET AL.,

    Defendants.
_____/

Case No. 04-72036

Honorable Nancy G. Edmunds

## OPINION AND ORDER GRANTING DEFENDANT JAYCO, INC.'S MOTION FOR SUMMARY JUDGMENT [40]

This is a consumer warranty case where Plaintiff alleges that Defendants sold him a faulty recreational vehicle ("RV"). The matter is before the Court on Defendant Jayco, Inc. ("Jayco")'s motion for summary judgment. For the reasons stated below, this Court GRANTS Defendant's motion for summary judgment.

**I.  Facts**

The Court is familiar with the facts. An abbreviated version is as follows. In June 2002, Plaintiff purchased and took delivery of a new 2001 Jayco Eagle RV from Defendant Lloyd Bridges. The "home" portion of the RV was manufactured by Defendant Jayco, Inc. ("Jayco"). This "home" portion sits on a chassis, manufactured by Defendant Ford Motor Company, Inc. ("Ford"). Jayco sold the completed RV to Defendant Lloyd Bridges, an independent dealer, who in turn sold the RV to Plaintiff.[1] Following delivery, Plaintiff had

---

[1] This Court previously granted Defendant Lloyd Bridges' motion for summary judgment and thus all claims asserted against it have been dismissed. (3/30/05 Order.)

several repairs performed on the RV, some performed by Jayco.  (Pl.'s Resp., Ex. B.)

Plaintiff's lawsuit, originally filed in Washtenaw County Circuit Court on April 14, 2004, asserts that the RV required repairs under Jayco's limited warranty at least six times and was out of service for at least 99 days while being repaired.  (Pl.'s Resp. at 1.)  Plaintiff's complaint alleges claims for breach of contract, revocation of acceptance, violation of Michigan's Motor Vehicle Service and Repair Act, violation of Michigan's Consumer Protection Act, breach of written warranty under Magnuson-Moss Warranty Act, breach of implied warranty under Magnuson-Moss, breach of express warranty, and breach of implied warranty of merchantability.

Defendants removed the action to this Court on May 28, 2004.  This Court's subject matter jurisdiction is based on Plaintiff's Magnuson-Moss Warranty claims.

On September 8, 2004, this Court granted Defendant Lloyd Bridges' motion seeking summary judgment in its favor on Plaintiff's warranty claims brought under both federal and state law, finding that Lloyd Bridges had effectively disclaimed any and all warranties.

On March 30, 2005, this Court granted Defendant Lloyd Bridges' motion seeking summary judgment in its favor on Plaintiff's remaining claims against it; i.e., breach of contract, revocation of acceptance, violation of the Michigan Consumer Protection Act, and violation of Michigan's Motor Vehicle Service and Repair Act.

This matter is now before the Court on Defendant Jayco's motion seeking summary judgment in its favor on each of Plaintiff's claims alleged against it.

**II.   Standard for Summary Judgment**

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice.  Rather, there must be evidence on which the jury could reasonably find for the non-moving party.  *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

**III.   Analysis**

**A.  Revocation of Acceptance and Breach of Contract Claims**

At the October 19, 2005 hearing on Jayco's motion, the Court was informed that Plaintiff was dismissing his revocation of acceptance and breach of contract claims. Accordingly, there is no need for further discussion here.

**B. Breach of Express Warranty**

Plaintiff argues that Defendant Jayco is in breach of its express limited warranty that promises to repair or replace a substantial defect in Jayco-manufactured parts because Plaintiff's RV was out of service for miscellaneous Jayco warranty repairs for at least 99 days. Defendant argues that Plaintiff's breach of express warranty claims should be dismissed because (1) Jayco's limited express warranty does not state an affirmation of fact or a promise and thus does not fall within Michigan's statutory definition of an express warranty, Mich. Comp. Laws Ann. § 440.2313(1); and (2) even if it does satisfy this definition, no material question of fact exists with respect to a breach of that express warranty. This Court disagrees with Defendant on its first argument but agrees with it on its alternative argument that there is no evidence that Jayco breached its express limited warranty.

Defendant Jayco, in its written limited warranty, provides a 2 year warranty for Jayco-manufactured parts and a 3 year warranty for Jayco-manufactured structure or 24,000 miles, whichever first occurs. The limited warranty further provides that: (1) Jayco warrants that "all parts of our manufacture are free from substantial defects in material and workmanship", (2) coverage is limited to "only the body structure manufactured and assembled by Jayco," (3) the warranty for Jayco-manufactured structure is limited to "the structure of the interior and exterior sidewalls, floor, roof, and frame against substantial material and manufacturing defects"; and (4) Jayco's responsibility under the warranty is limited to repair and replacement, at Jayco's option, of any part of the vehicle covered by its warranty and found to be defective in material or workmanship, without charge to the

customer for parts or labor.[2]  (Def.'s Mot., Ex. 2, Jayco Limited Warranty at 1.)  Jayco's limited warranty, as set forth below, also disclaims all consequential and incidental damages, limits implied warranties, and provides that the performance of repairs is the exclusive remedy under this written warranty or any implied warranty.

**DISCLAIMER OF CONSEQUENTIAL AND INCIDENTAL DAMAGES:**

**You and any other user of Jayco products shall not be entitled to any consequential or incidental damages, including without limitation, loss of use of the unit, inconvenience, lodging, damage to personal property, alternative transportation, phone calls, meals, lost income or earnings.**  This warranty gives you specific legal rights and you may also have other rights, which vary from state to state.

**DISCLAIMER AND LIMITATION OF IMPLIED WARRANTIES:**
**Jayco does not authorize any person to create for it any other obligation or liability in connection with this vehicle.  Any implied warranty of merchantability or fitness for a particular purpose applicable to this vehicle is limited in duration to the duration of this written warranty.  The performance of repairs is the exclusive remedy under this written warranty or any implied warranty.  Jayco shall not be liable for incidental or consequential damages resulting from breach of this written warranty or any implied warranty.**  Some states do not allow limitations on how long an implied warranty will last or the exclusion or limitation of incidental or consequential damages, so the above limitations or

---

[2]Jayco's limited warranty provides as follows:

**JAYCO'S RESPONSIBILITY**

Any part of the vehicle subject to warranty, which is found to be defective in material or workmanship, will be repaired or replaced at Jayco's option without charge to the customer for parts or labor.  While any Jayco motorhome dealer can perform the warranty service, we recommend the purchaser return to the selling dealer.  If the customer has moved or is touring the United States or Canada, please contact the nearest Jayco motorhome dealer for service or for purchasing parts.

(Def.'s Mot., Ex. 2, Jayco Limited Warranty at 1.)

exclusions may not apply to you.

(*Id.* at 2.)

Contrary to Defendant's argument here, its limited warranty expressly promises "that all parts of our manufacture are free from substantial defects in material and workmanship." (*Id.* at 1.) Accordingly, its limited warranty falls within Michigan's statutory definition of an express warranty. Mich. Comp. Laws Ann. § 440.2313(1). Plaintiff, however, has failed to present evidence that Jayco breached its express limited warranty.

Plaintiff complains that Defendant Jayco breached its limited express warranty because the RV was serviced by Jayco on at least six different occasions for various repairs and was out of service for at least 99 days. Plaintiff lumps all of the repairs together. Most were minor and easily repairable; i.e., missing porcelain was replaced on the stove top, a television cabinet door that wouldn't stay in was repaired, the TV was remounted, a screw was replaced on a furnace door, missing velcro on a headboard was replaced, a broken guide on the silverware drawer was fixed, some shades were adjusted, some window and ceiling molding was reinstalled, the driver's side mirror was replaced, labels on utility center were replaced, a retaining clip was adjusted on the driver's side A pillar, electrical wiring for the radio was inspected and repaired, a lens on an interior compartment light was tightened, and a new antenna was installed for the stereo system. (Pl.'s Ex. B, Jayco repair orders.) Plaintiff does not dispute that these repairs were made to his satisfaction. (Pl.'s Dep. at 41-42.) After inspecting the interior of the RV, Defendant Jayco's expert, Randy Zonker, opines that "all interior components are in working order", including all electrical components, and all exterior components are in working order and functioning as designed. (Def.'s Ex. 3, Zonker Expert Report at 3-4.)

Plaintiff's sole remaining complaint is that, when it is raining or the vehicle is being washed, water leaks occur in the RV's rear basement storage compartments[3] and in its cab area on the floor board near the driver's seat. (Pl.'s Dep. at 41-45, 165-66, 177-88.) Plaintiff claims that, despite Jayco's numerous attempts to do so, it has failed to repair these leaks and thus Jayco's limited warranty has failed of its essential purpose. This Court disagrees.

As the Jayco repair orders show, Plaintiff has complained of numerous water leaks and admits that some have been satisfactorily repaired; i.e., water leak on driver's side A pillar, water leak in passenger side front bay door, rear window leak, and prior leak on driver's side floor board. (Pl.'s Ex. B, Jayco Repair Orders; Pl.'s Dep. at 41-45.) Two remaining water leaks were identified by Defendant's expert, Randy Zonker, in his expert report, prepared after a June 2, 2005 inspection of Plaintiff's RV; both requiring only minor repairs and only one affecting a Jayco-manufactured part that did not, in the expert's opinion, constitute a substantial defect in material or workmanship and thus no breach of Jayco's limited express warranty. (Def.'s Ex. 3, Zonker Expert Report at 5-7.)

Zonker's expert report begins by observing that water leaks of the type Plaintiff has complained about are normal in the industry and do not substantially impair the value of his RV. (*Id.* at 2.) As to Plaintiff's current water leak complaints, Mr. Zonker explains that certain diagnostic tests were performed on the RV, including rain booth tests, an underbody water test using a sprinkler, an ultrasonic leak detector test, an examination under the

---

[3]Defendant Jayco explains that these storage compartments are located on the outside of the RV, underneath the living area, have locks on them, and are accessible only from the outside. Typically, they are used for storage for things like coolers, lawn chairs, hoses, and things of this nature. (Def. Br. at 13, n.2.)

7

hood, the wheel well, and of the interior and exterior of the driver's side of the RV, and a test drive. (*Id.* at 3, 4.) This testing revealed no leaks in the storage compartments on the passenger side of the RV and no leaks in the interior of the RV. (*Id.* at 5.)

As to the driver's side of the RV, two water leaks were revealed. The first concerns a leak that manifests itself at the driver's feet in the cab area. The expert opined that the potential site of this leak was at the shifter cable, and that "[i]t appears that this area was previously sealed, but the sealant/caulk is now falling off." (*Id.* at 5.) He further opined that the area is fairly close to the driver's side front wheel well, and if the RV is driven on wet roads, some water would likely leak into the cab in this area. (*Id.*) The expert notes that "Jayco does not perform any work during the final stage assembly of the motor home on this area" and that "Jayco has never performed work for an alleged leak in this area." (*Id.*)[4] In any event, Defendant Jayco's expert opines that this is a simple repair, merely requiring resealing or re-caulking. (*Id.*)

The second water leak was discovered in the rear most outside storage compartment on the driver's side. Defendant's expert describes this as a minor leak, discovered during the rain booth test when water in the rain booth was sprayed directly at the subject area. (*Id.*) He describes it as a "slight leak" resulting in "water getting into the compartment where the lower, rear portion of the compartment door closes." (*Id.*) The expert opines that "it would be unlikely that the amount of water that leaked in this compartment would cause damage to anything in the compartment." (*Id.* at 6.) Moreover, he further opines that repair

---

[4] Jayco argues that this is part of the chassis and subject to any warranties issued by Defendant Ford, not Jayco. Plaintiff does not present any evidence or arguments contesting this or arguing that Jayco is responsible for leaks caused by the lack of sealant or caulking at the shifter cable.

8

would be easy, consisting most likely of adding "more sealant at the lip, where the door closes." (*Id.*) In addition, the expert recommends "remov[ing] some of the molding at the exterior of the compartment and properly clean[ing] and seal[ing] the entire compartment." (*Id.*) He opines that to completely repair this slight leak and to conduct further testing would take no longer than an hour for a cost of less than $250. (*Id.*)

Plaintiff provides no evidence that contradicts these conclusions. Accordingly, this Court concludes that no genuine issue of material fact exists as to whether Jayco has breached its express limited warranty. It has not. First, there is no evidence of a substantial defect in the material and workmanship of Jayco-manufactured parts or structure in Plaintiff's RV. Second, there is no evidence that the limited warranty's exclusive remedy of repair or replacement Jayco-manufactured parts failed of its essential purpose. There is no evidence that Defendant Jayco refused to repair Plaintiff's RV. In fact, Plaintiff has testified that, with the exception of the water leaks, Jayco completed all repairs to his satisfaction. As to his current complaint of water leaks, Defendant Jayco is willing and ready to repair, pursuant to the terms of its express limited warranty, the one minor leak attributable to a Jayco-manufactured part, the rear driver's-side basement storage compartment.

That Plaintiff's RV was previously serviced is not enough to establish a breach of Defendant Jayco's express warranty. *See Ducharme v. A&S RV Center*, 321 F. Supp.2d 843, 850-51 (E.D. Mich. 2004) (similarly observing that (1) "the fact that the motor home was previously repaired does not establish a breach of an express warranty", (2) some service on a complex product like a motor home is inevitable, and (3) there is no breach when the manufacturer is willing to repair an existing problem under the warranty), *aff'd*,

No. 04-1224, 127 Fed. Appx. 204 (6th Cir. May 3, 2005). Moreover, Plaintiff cannot establish a claim that the limited warranty's exclusive remedy of repair or replacement of Jayco-manufactured parts failed of its essential purpose by lumping together all the repairs and the aggregate amount of time his RV was out of service. *See Computer Network, Inc. v. AM Gen. Corp.*, 696 N.W.2d 49, 55 (Mich. Ct. App. 2005)(observing that the plaintiff cannot rely on the aggregate number of repairs to argue that there is a question of fact whether the time for repairs was unreasonable but rather must offer evidence as to each specific repair showing that the time for that repair was unreasonable under the circumstances). Furthermore, the evidence Plaintiff presents confirms rather than refutes Defendant's claim that there is no breach. For example, in response to Plaintiff's complaint that both rear basement storage compartments leaked in the rain, Defendant Jayco kept Plaintiff's RV for an extended period of time in June 2003, at Plaintiff's request, so the RV could be road-tested during rain. Then, in response to Plaintiff's complaint (along with other miscellaneous complaints) that all of the basement storage compartments leaked in the rain, Defendant Jayco kept the RV for an extended period of time in July 2003, test driving it approximately 170 miles in the rain. (Pl.'s Ex. B, Work Order Nos. WO 599, WO 690.)

Finally, to the extent Plaintiff claims damages beyond the repair cost of the one remaining water leak in the storage compartment, such expenses, representing incidental and consequential damages, were expressly disclaimed in Jayco's limited warranty. (Def.'s Ex. 2, Jayco Limited Warranty at 2.) Accordingly, Defendant Jayco is entitled to summary judgment on Plaintiff's express warranty claim.

    **C.**    **Breach of Implied Warranty**

Plaintiff claims that his RV was subject to an implied warranty of merchantability, pursuant to Mich. Comp. Laws Ann. § 440.2314,[5] and that Defendant Jayco breached that implied warranty because, despite numerous attempts at repair, one of the rear basement storage compartments still has a minor water leak.  Defendant argues that Plaintiff's claim must be dismissed because it is a remote manufacturer, not in privity of contract with Plaintiff, and further, even if privity were not required under Michigan law, there is no evidence of any breach.  This Court agrees with Defendant Jayco.

As to the privity requirement, this Court stands with the numerous other judges in the Eastern and Western Districts of Michigan that have exhaustively examined Michigan law and have predicted that the Michigan Supreme Court would require that a consumer be in privity of contract with a remote manufacturer to state a breach of implied warranty claim seeking purely economic damages under § 440.2314.  *See Pidock v. Ewing*, 371 F. Supp.2d 870, 877-78 (E.D. Mich. 2005) (Cohn, J.); *Ducharme v. A & S RV Center, Inc.*, 321 F. Supp.2d 843, 853-54 (E.D. Mich. 2004) (Cohn, J.), *aff'd*, No. 04-1223, 127 Fed. Appx. 204 (6th Cir. May 3, 2005); *Pitts v. Monarch Coach Corp.*, 330 F. Supp.2d 918, 924-26 (W.D. Mich. 2004) (Bell, J.); *Parsley v. Monarch Coach Corp.*, 327 F. Supp.2d 797, 803-05 (W.D. Mich. 2004) (Bell, J.); *Pack v. Damon Corp.*, 320 F. Supp.2d 545, 560-61 (E.D. Mich. 2004) (Steeh, J.);  *Treadaway v. Damon Corp.*, No. 03-CV-73650-DT, 2004 WL 3372010,

---

[5]Mich. Comp. Laws Ann. § 440.2314 provides in pertinent part that:

(1)  Unless excluded or modified (section 2316), a warranty that the goods shall be merchantable is implied <u>in a contract for their sale</u> if the seller is a merchant with respect to goods of that kind. . . .

(emphasis added; footnote omitted).

11

\*10 (E.D. Mich. Sept. 30, 2004) (Cleland, J.); *Gernhardt v. Winnebago Industries*, No. 03-73917, 2003 WL 23976324, \*\*3-4 (E.D. Mich. Dec. 30, 2004) (Borman, J.); *Watson v. Damon Corp.*, No. 1:02-CV-584, 2002 WL 3259736, \*\*5-6 (W.D. Mich. Dec. 17, 2002) (Quist, J.); and *Chiasson v. Winnebago Industries*, No. 01-CV-74809, 2002 WL 32828652, \*\*5-11 (E.D. Mich. May 16, 2002) (Steeh, J.).  This Court is aware of a contrary holding in *Michels v. Monaco Coach Corp.*, 298 F. Supp.2d 642, 645-50 (E.D. Mich. 2003) (Duggan, J.).  *See also Leyva v. Coachmen R.V. Co.*, No. 04-40171, 2005 WL 2246835, \*\*1-2 (E.D. Mich. Sept. 15, 2005) (Gadola, J.) (following *Michels*).  This Court disagrees with the holding in *Michels*, finding its reasoning unpersuasive. *Michels* relies on Michigan Supreme Court cases that gave birth to that State's current product liability jurisprudence.  It is true that in actions where consumers seek recovery for personal injuries, Michigan law allows them to pursue both tort-based claims and UCC-based breach of implied warranty claims despite a lack of privity with a remote manufacturer.  There is, however, no post-UCC Michigan Supreme Court decision that allows a consumer to do what Plaintiff seeks here – obtain purely economic damages from a remote manufacturer under a breach of an implied warranty claim where there is no privity of contract.  This Court, like the vast majority of other judges in the decisions cited above, predicts that the Michigan Supreme Court would limit Plaintiff to his remedies under a breach of express warranty claim where there is no privity of contract with a remote manufacturer and the consumer Plaintiff is seeking solely economic damages. The Sixth Circuit Court of Appeals recently affirmed Judge Cohn's decision in *Ducharme* reaching this same conclusion.  *Ducharme*, No. 04-1223, 127 Fed. Appx. 204 (6th Cir. May 3, 2005).  Accordingly, Defendant Jayco is entitled to summary judgment on Plaintiff's breach of implied warranty claims brought under Mich.

Comp. Laws Ann. § 440.2314.

### D.  Michigan Consumer Protection Act and Magnuson-Moss Warranty Act

Plaintiff concedes that his claims brought under Michigan's Consumer Protection Act, Mich. Comp. Laws. Ann. § 445.901, *et seq.*, and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(3), 2301(7), 2308, 2310(d)(1) and (2), are derivative of his claims that Defendant Jayco breached express and implied warranties arising under Mich. Comp. Laws Ann. §§ 440.2313 and 440.2314.  (Pl.'s Resp. at 18-19).  Accordingly, because this Court has determined that Defendant Jayco is entitled to summary judgment on Plaintiff's breach of express and implied warranty claims brought under Mich. Comp. Laws Ann. §§ 440.2313 and 440.2314, Plaintiff's remaining Michigan Consumer Protection Act and Magnuson-Moss Warranty Act claims likewise fail.  All claims asserted against Defendant Jayco in Plaintiff's complaint are thus dismissed.[6]

---

[6]Count VIII of Plaintiff's complaint, alleging a violation of Michigan's Motor Vehicle Service and Repair Act, Mich. Comp. Laws Ann. §§ 257.1301, *et seq.*, against Defendant Lloyd Bridges Traveland, was previously dismissed.  (3/30/05 Order.)  Accordingly, the only claims remaining in this action are those asserted against Defendant Ford Motor Company in Counts I-VII.

**IV.    Conclusion**

For the above-stated reasons, this Court GRANTS Defendant Jayco's motion for summary judgment.

<pre>
                s/Nancy G. Edmunds                        
                Nancy G. Edmunds
                United States District Judge
</pre>

Dated:  October 25, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 25, 2005, by electronic and/or ordinary mail.

<pre>
                s/Carol A. Hemeyer                        
                Case Manager
</pre>