UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLENN HARNDEN,

    Plaintiff,

v.

FORD MOTOR COMPANY, ET AL.,

    Defendants.
_____/

Case No. 04-72036

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT FORD MOTOR COMPANY'S MOTION FOR SUMMARY JUDGMENT [50]**

This is a consumer warranty case where Plaintiff alleges that Defendants sold him a faulty recreational vehicle ("RV"). The matter is before the Court on Defendant Ford Motor Co. ("Ford")'s motion for summary judgment. For the reasons stated below, this Court GRANTS Defendant's motion for summary judgment.

**I.   Facts**

The Court is familiar with the facts. An abbreviated version is as follows. In June 2002, Plaintiff purchased and took delivery of a new 2001 Jayco Eagle RV from Defendant Lloyd Bridges. The "home" portion of the RV was manufactured by Defendant Jayco, Inc. ("Jayco"). This "home" portion sits on a chassis, manufactured by Defendant Ford. Jayco sold the completed RV to Defendant Lloyd Bridges, an independent dealer, who in turn sold the RV to Plaintiff. Following delivery, Plaintiff had several repairs performed on the RV, some performed by Jayco and some performed by Ford.

On April 14, 2004, Plaintiff filed this lawsuit in Washtenaw County Circuit Court against

Defendants Lloyd Bridges, Jayco and Ford alleging claims for breach of contract, revocation of acceptance, violation of Michigan's Motor Vehicle Service and Repair Act, violation of Michigan's Consumer Protection Act, breach of written and implied warranties under the Magnuson-Moss Warranty Act, and breach of express warranties and implied warranties of merchantability under Michigan's Uniform Commercial Code. Defendants removed this action here on May 28, 2004. This Court's subject matter jurisdiction is based on Plaintiff's Magnuson-Moss claims.

On September 8, 2004, this Court granted Defendant Lloyd Bridges' motion seeking summary judgment in its favor on Plaintiff's warranty claims brought under both federal and state law, finding that Lloyd Bridges had effectively disclaimed any and all warranties.

On March 30, 2005, this Court granted Defendant Lloyd Bridges' motion seeking summary judgment in its favor on Plaintiff's remaining claims against it; i.e., breach of contract, revocation of acceptance, violation of the Michigan Consumer Protection Act, and violation of Michigan's Motor Vehicle Service and Repair Act.

On October 25, 2005, this Court granted Defendant Jayco's motion seeking summary judgment in its favor on each of Plaintiff's claims alleged against it.

This matter is now before the Court on Defendant Ford's motion seeking summary judgment in its favor on each of Plaintiff's remaining claims alleged against it.[1]

## II. Standard for Summary Judgment

Summary judgment is appropriate only when there is "no genuine issue as to any

---

[1] Plaintiff voluntarily dismissed his claims against Defendant Ford alleging breach of contract, revocation of acceptance, and violation of Michigan's Motor Vehicle Service and Repair Act. (Def.'s Br. at 6.)

material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice.  Rather, there must be evidence on which the jury could reasonably find for the non-moving party.  *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III. Analysis

#### A. State-Law Express Warranty Claims Against Ford

Plaintiff, lumping all Jayco-related and Ford-related repairs together, argues that Ford's express limited warranty failed of its essential purpose because these combined repairs were not performed within a reasonable time.  (Pl.'s Resp. at 1-3, 5.)  Defendant

Ford argues that Plaintiff's breach of express warranty claims against it should be dismissed because no genuine issue of material fact exists on this issue. This Court agrees with Ford.

Jayco manufactured Plaintiff's RV using component parts from numerous manufacturers. The chassis is the only component supplied by Ford. Accordingly, repairs to other portions of the RV are irrelevant to Plaintiff's claims against Ford. At his deposition, Plaintiff testified that his sole remaining complaints were that, when it was raining or his RV is being washed, water leaks occur in the RV's rear basement storage compartments and in its cab areas on the floor board near the driver's seat. (Pl.'s Dep. at 41-45, 165-66, 177-88.) The storage compartments are Jayco-manufactured component parts. Thus, the only leak at issue here is that alleged to occur in the RV's cab area on the floor board near the driver's seat.

Defendant Ford's express warranty is limited to repair, replacement, or adjustment of Ford parts, and disclaims all incidental and consequential damages. (Def.'s Ex. C at 4) It provides, in pertinent part, that:

> [a]uthorized Ford Motor Company dealers will repair, replace, or adjust all parts on your vehicle that are defective in factory-supplied materials or workmanship. Items or conditions that are not covered by the New Vehicle Limited Warranty are described on pages 7-9. . . . When making warranty repairs on your vehicle, the dealer will use Ford or Motorcraft parts or remanufactured or other parts that are autorized by Ford. In certain instances, Ford may authorize repairs at other than Ford dealer facilities.

(Def.'s Ex. C at 5-6.)

The repair history on the Ford chassis is limited. Plaintiff presented his RV to Ford for repairs on only three occasions, requiring the RV to be out of service for a total of 10 days. (Pl.'s Resp., Ex. A; Def.'s Mot., Exs. D, E, and F.) On July 11, 2002, Plaintiff brought his

vehicle to McDonald Ford in Northville. (Def.'s Ex. D, Ford Invoice No. 41276.) The dealer found a power steering fluid leak, replaced the hydro booster, added fluid, and purged the system. (*Id.*) The repairs were completed in 6 days. (*Id.*)

The following year, on September 9, 2003, Plaintiff brought his RV to Jordan Ford for a water leak on the driver's side in the dash area. (Def.'s Ex. E; Pl.'s Ex. A, Jordan Ford Invoice No. 605374.) Handwritten notes reflect that the RV was "checked for water leaking under driver side of dash. Water was coming between brake booster and fire-wall thru push-rod hole. Pulled booster away from firewall and applied silicone RTV. After allowing it to cure, rechecked for leaks. No more leaks detect[ed]. Wiped floor board and blow-dried carpet with shop air." (*Id.*) This RV repair was completed in three days. (*Id.*)

One month later, on October 29, 2003, Plaintiff brought his RV to Defendant Lloyd Bridges complaining of a water leak on the driver's side floor board. (Def.'s Ex. F.) The Lloyd Bridges invoice indicates that this problem was "fixed by Jordan Ford." (*Id.*) A Jordan Ford invoice, dated October 30, 2003, states: "Ck driver carpet wet when driving." (*Id.*) Typed notes reveal Jordan Ford's inspection and repairs:

> Water Test Windshield
> Water Test Inside Engine Compartment
> Has Leak on Driver Side
> Remove 12A581 Engine Sensor Wire Harness
> Remove Seats
> Remove Dash ASY
> Remove 14A200 Body Wire Harness
> Remove Gas and Brake Pedals
> Remove Sound Insulation
> Install "Dummy Wire Plugs" to Seal Dash
> Re Water Test
> Seal Fire Wall Both Inside and Out for Seam Sealer Skip
> Let Dry and Re Test
> Also Had Leak Along the Floor at Engine Cover Seal
> Seal Seam Inside and Out

> Re Test
> Unable to Find Any More Leaks At This Time
> Reinstall Dash and Wire Harnesses
> Check Operation of All Ford Components.

(Pl.'s Ex. A, Jordan Ford 10/30/03 Invoice No. 609968, p. 2.) This was all completed and Plaintiff's RV was returned to him on October 30, 2003.

October 30, 2003 was the last time Plaintiff presented his vehicle with any complaint about this water leak.[2]

On October 6, 2004, at the time of his deposition, Plaintiff testified that he had not driven the RV since December 2003, but the last time he drove it in the rain, he noticed a "four or six inch size spot" where the carpet was soaked. (Pl.'s Dep. at 42-43.) He further testified that Ford made two attempts to fix a leak in that area and "it may not even be the same leak." (*Id.* at 44.) Plaintiff did not testify that he took the RV to Ford to get this latest leak repaired.

On October 25, 2005, a Ford Field Service Engineer inspected the Ford chassis in Plaintiff's RV and found no water or other leak related to Plaintiff's sole remaining complaint against it. (Def.'s Mot, Ex. G.) His complete report is as follows:

> The two areas of inspection were a power steering leak and a concern of the carpeting getting wet on the drivers side door. The hydro brake booster was replaced on 7/11/02 for the power steering leak concern and there was no signs of this leaking since that repair. Second I inspected for any signs of a water leak on the drivers side floor area. The drivers side carpet was completely dry and I also pulled the carpet back and inspected the insulation on bulkhead just above the carpet and it was completely dry also. There was

---

[2] Plaintiff made numerous complaints to Defendant Jayco about water leaks in the RV's basement storage compartments (located on the outside of the RV, underneath the living area) that are typically used for storage of coolers, lawn chairs, hoses, and things of this nature. These are not part of the Ford chassis and thus are not relevant to Plaintiff's claims against Defendant Ford.

6

> [sic] no signs of any water traces and also there was no musty or damp smells like water was present. I did also check the carpet and pad on the passenger side which also looked completely dry. The last repair of sealing the bulkhead appears to have fix [sic] the concern. I have some digital pictures attached of areas of inspection. If you have any questions let me know.

(*Id.*)

Defendant Ford argues that the service record, the October 25, 2005 inspection report, and Plaintiff's deposition testimony establish that any problems in the Ford chassis brought to its attention were minor and promptly repaired. Moreover, to the extent Plaintiff claims that a leak is still present in the cab of the motor home, Ford attests that it is ready and willing to repair it. (Def.'s Br. at 9.)

Plaintiff provides no evidence that contradicts these facts. Accordingly, this Court concludes that no genuine issue of material fact exists as to whether Ford has breached its express limited warranty. It has not. There is no evidence that the limited warranty's exclusive remedy of repair, replacement, or adjustment of Ford-manufactured parts failed of its essential purpose. There is no evidence that Ford did not make requested repairs within a reasonable time. There is no evidence that Ford refused to repair Plaintiff's RV. As to Plaintiff's current complaint of a water leak in the cab area, there is no evidence that this is the same water leak previously repaired by Ford. (Pl.'s Dep. at 44.) Moreover, Ford has expressed that it is willing and ready to repair this minor leak under the terms of its express warranty.

That Plaintiff's RV was previously serviced is not enough to establish a breach of Defendant Ford's express warranty. *See Ducharme v. A&S RV Center*, 321 F. Supp.2d 843, 850-51 (E.D. Mich. 2004) (similarly observing that (1) "the fact that the motor home

7

was previously repaired does not establish a breach of an express warranty", (2) some service on a complex product like a motor home is inevitable, and (3) there is no breach when the manufacturer is willing to repair an existing problem under the warranty), *aff'd*, No. 04-1224, 127 Fed. Appx. 204 (6th Cir. May 3, 2005). Moreover, Plaintiff cannot establish a claim that Ford's limited warranty's exclusive remedy of repair, replacement or adjustment failed of its essential purpose by lumping together Ford and non-Ford repairs and by aggregating the amount of time the RV was out of service for any and all repairs. *See Computer Network, Inc. v. AM Gen. Corp.*, 696 N.W.2d 49, 55 (Mich. Ct. App. 2005)(observing that the plaintiff cannot rely on the aggregate number of repairs to argue that there is a question of fact whether the time for repairs was unreasonable but rather must offer evidence as to each specific repair showing that the time for that repair was unreasonable under the circumstances).

Finally, to the extent Plaintiff claims damages beyond the repair cost of the one remaining water leak in the RV cab, such expenses, representing incidental and consequential damages, were expressly disclaimed in Ford's limited warranty. (Def.'s Ex. C, Ford Limited Warranty at 4.) Accordingly, Defendant Ford is entitled to summary judgment on Plaintiff's express warranty claim.

### C. State-Law Breach of Implied Warranty Claim Against Ford

Plaintiff also claims that the Ford chassis of his RV was subject to an implied warranty of merchantability, pursuant to Mich. Comp. Laws Ann. § 440.2314, and that Defendant Ford breached that implied warranty because, despite numerous attempts at repair, the cab area of the RV still has a minor water leak (causing a three to four inch water spot). (Pl.'s Dep. at 42-43.) Defendant argues that Plaintiff's claim must be dismissed because it is a

8

remote manufacturer, not in privity of contract with Plaintiff, and further, even if privity were not required under Michigan law, there is no evidence of any breach.

This Court rejects Ford's first argument in light of a recent decision by the Sixth Circuit Court of Appeals predicting that the Michigan Supreme Court will hold that privity is not required under Michigan law for a breach of implied warranty claim. *See Pack v. Damon Corp.*, 434 F.3d 810, 818-820 (6th Cir. 2006). Nonetheless, the Court agrees with Defendant Ford on its later argument; there is no evidence of any breach of an implied warranty of merchantability.

Michigan's Uniform Commercial Code provides that "(1)[u]nless excluded or modified . . . , a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind," and that "(2) [g]oods to be merchantable must be at least such as . . . are fit for the ordinary purposes for which such goods are used." Mich. Comp. Laws Ann. § 440.2314. Ford's limited express warranty notifies Plaintiff that he "may have some implied warranties"; e.g., "an implied warranty of merchantability (that the [Ford product] is reasonably fit for the general purposes for which it was sold)" and further provides that "[t]hese implied warranties are limited, to the extent allowable by law, to the time period covered by the written warranties, or to the applicable time period provided by state law, whichever period is shorter." (Def.'s Ex. C, Ford Limited Warranty at 4.)

As to goods accepted, the burden is on the buyer to establish any claimed breach of warranty. *Guaranteed Const. Co. v. Gold Bond Products*, 395 N.W.2d 332, 336 (Mich. Ct.

9

App. 1986). Plaintiff has not met this burden. Evidence that a minor leak may still exist,[3] is insufficient to show that the Ford chassis is not merchantable. "Merchantable is not a synonym for perfect. . . . The warranty of merchantability is that goods are of average quality in the industry." *Id.* (internal citation omitted). Plaintiff does not provide legal authority to the contrary. Accordingly, Defendant Ford is entitled to summary judgment on Plaintiff's breach of implied warranty claims brought under Mich. Comp. Laws Ann. § 440.2314.[4]

---

[3]As evidence that a minor leak in the cab area may still exist, Plaintiff relies on a June 2, 2005 inspection and report prepared by Defendant Jayco's expert, Randy Zonker. (Pl.'s Ex. B.) Based on his inspection, Mr. Zonker rendered the following relevant opinions. At the time of the inspection, the RV had 5,312 miles on it. It appeared that Plaintiff had not used it for quite some time, and little to no maintenance had been performed on it. Nonetheless, the interior and exterior of the coach were still in good shape. (*Id.* at 3.) As to Plaintiff's complaint about a water leak in the cab near the driver's feet, an ultrasonic leak detector was used to look for a leak that would manifest itself near the driver's feet, and the RV was investigated under the hood, in the wheel well, and at the interior and exterior of the driver's side of the motor home. (*Id.* at 4.) A <u>potential leak</u> was identified at the shifter cable. Jayco's expert opined that: "It appears that this area was previously sealed, but the sealant/caulk is now falling off. The area is fairly close to the driver's side front wheel well. To that end, if the motor home is driven on wet roads, some water would, likely, leak into then [sic] cab at this area. <u>However, this should be a minor repair. The area just needs to be resealed or re-caulked</u>." (*Id.* at 5 (emphasis added).)

[4]The same reasoning and result would apply to Plaintiff's breach of implied warranty claim against Defendant Jayco. Plaintiff, in the last paragraph of his supplemental brief opposing Ford's motion, asks this Court to reconsider and reverse its October 25, 2005 decision granting Defendant Jayco's motion for summary judgment in light of the Sixth Circuit's recent decision in *Pack v. Damon Corp.*, 434 F.3d 810 (6th Cir. 2006). This request is denied for both procedural and substantive reasons. In addition to being untimely, Plaintiff's request lacks merit. Evidence that a minor leak may still exist in the basement compartment of his RV is insufficient to show that Jayco breached an implied warranty of merchantability.

As discussed in the Court's October 25, 2005 Opinion and Order, Plaintiff failed to present evidence refuting Jayco's expert's testimony that Plaintiff's sole remaining complaints of minor water leaks do not constitute substantial defects in material or workmanship. (10/25/05 Order at 7.) This Court further held that Plaintiff cannot establish

**C. Michigan Consumer Protection Act and Magnuson-Moss Warranty Claims**

Plaintiff concedes that his claims brought under Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. §§ 445.901, *et seq.*, and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(3), 2301(7), 2308, 2310(d)(1) and (2), are derivative of his claims that Defendant Ford breached express and implied warranties arising under Mich. Comp. Laws Ann. §§ 440.2313 and 440.2314. (Pl.'s Resp. at 16.) Accordingly, because this Court has determined that Defendant Ford is entitled to summary judgment on Plaintiff's state-law breach of express and implied warranty claims, Plaintiff's remaining Michigan Consumer Protection Act and Magnuson-Moss Warranty Act claims likewise fail. All claims asserted against Defendant Ford in Plaintiff's complaint are thus dismissed.

**IV. Conclusion**

For the above-stated reasons, Defendant's motion for summary judgment is GRANTED.

s/Nancy G. Edmunds  
Nancy G. Edmunds  
United States District Judge

Dated: April 10, 2006

---

a claim that the limited warranty's exclusive remedy of repair or replacement failed of its essential purpose by lumping together all RV repairs and the aggregate amount of time his RV was out of service. Rather, under Michigan law, Plaintiff must offer evidence as to each specific repair showing that the time for that repair was unreasonable under the circumstances, and Plaintiff failed to satisfy this burden. (10/25/05 Order at 10 citing *Computer Network, Inc. v. AM Gen. Corp.*, 696 N.W.2d 49, 55 (Mich. Ct. App. 2005)). Finally, this Court observed that the evidence Plaintiff presented in response to Jayco's motion confirmed rather than refuted Defendant's arguments that there was no breach of warranty; i.e., it showed that Jayco kept Plaintiff's RV for extended periods of time at Plaintiff's request. (10/25/05 Order at 10.)

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 10, 2006, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager